145 F.3d 568
 28 Envtl. L. Rep. 21,435
 CITY OF NEW YORK, Petitioner,
v.
Rodney E. SLATER, Secretary of Transportation, Charles A.
Hunnicutt, Assistant Secretary for Aviation and
International Affairs, Federal Aviation Administration, U.S.
Department of Transportation, Frontier Airlines, Inc.,
ValuJet Airlines, Inc., and AirTran Airways, Inc., Respondents.
 No. 97-4358.
 United States Court of Appeals,
Second Circuit.
 Argued June 23, 1998.
Decided July 6, 1998.
 
 William A. Walker, New York City (Jeffrey D. Friedlander, Acting Corporation Counsel of the City of New York, Michael D. Hess, Corporation Counsel of the City of New York, Susan E. Amron, New York City, of counsel, on the brief), for Petitioner.
 Stanley N. Alpert, Assistant United States Attorney, Brooklyn, NY (Zachary W. Carter, United States Attorney for the Eastern District of New York, Deborah B. Zwany, Assistant United States Attorney, Brooklyn, NY, on the brief), for Respondents Slater, Hunnicutt, Federal Aviation Administration, and United States Department of Transportation.
 Edward P. Faberman, Washington, DC (Paul A. Olsen, Ungaretti & Harris, Washington, DC, on the brief), for Respondent Frontier Airlines, Inc.
 Before: VAN GRAAFEILAND, KEARSE, and JACOBS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Petitioner City of New York (the "City") petitions for review of a final order of Secretary of Transportation Rodney E. Slater (the "Secretary") dated October 24, 1997 (the "Order"), granting exemptions under an exceptional-circumstances provision of the Federal Aviation Administration Authorization Act of 1994 (the "Act"), see 49 U.S.C. § 41714(c) (1994), in order to award takeoff and landing "slots" to respondents Frontier Airlines, Inc., ValuJet Airlines, Inc., and AirTran Airways, Inc., at LaGuardia Airport in excess of those permitted under the Administration's High Density Rule ("HDR"), see 14 C.F.R. Part 93, Subparts K and S (1998), which regulates the number of slots at that airport. The Secretary granted the exemptions in order to permit those airlines to provide nonstop service to Denver, Atlanta, and Knoxville, Tennessee, cities to which at most a single carrier then provided nonstop service from LaGuardia. In its petition for review, the City contends principally (1) that the Secretary's authority to grant exemptions had expired, (2) that the interpretation of the exceptional-circumstances criterion relied on in granting the exemptions was erroneous, and (3) that the Secretary's failure to issue an environmental impact statement in connection with the Order violated the National Environmental Policy Act, 42 U.S.C. § 4321 et seq. (1994) ("NEPA"). Because we conclude that the first contention is not properly before us and that the second and third lack merit, we deny the petition for review.
 
 
 2
 In general, a party is required to exhaust its administrative remedies before seeking judicial review of an agency decision, "in part because of concerns for separation of powers (i.e., the need to limit judicial interference in the agency process) and the need to conserve judicial resources." Pavano v. Shalala, 95 F.3d 147, 150 (2d Cir.1996); see, e.g., Northwest Airlines, Inc. v. U.S. Dep't of Transportation, 15 F.3d 1112, 1120-21 (D.C.Cir.1994); USAir, Inc. v. Dep't of Transportation, 969 F.2d 1256, 1259-61 (D.C.Cir.1992) ("litigants must not be encouraged to 'sandbag' agencies by withholding legal arguments for tactical reasons until they reach the courts of appeal"). Consistent with this principle, the Act provides that "[i]n reviewing an order under this section, the court may consider an objection to an order of the Secretary ... only if the objection was made in the proceeding conducted by the Secretary...." 49 U.S.C. § 46110(d). In the administrative proceedings before the Secretary in the matter presently before us, the City did not argue that the Secretary's authority to grant exemptions had expired. The City having offered no persuasive excuse for that failure, we conclude that that contention has not been preserved for review.
 
 
 3
 In reviewing the City's contention that exemptions for the respondent airlines were not warranted by exceptional circumstances, we conclude that the Secretary's decision was neither barred by the Act nor arbitrary and capricious, see Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The Act allows the Secretary to grant new entrants exemptions from the HDR "[i]f the Secretary finds it to be in the public interest and the circumstances to be exceptional." 49 U.S.C. § 41714(c)(2). The Secretary's interpretation of the provisions of the Act is entitled to deference, Chevron, 467 U.S. at 863-64, 104 S.Ct. 2778, even where it represents a change in agency policy, see, e.g., Rust v. Sullivan, 500 U.S. 173, 186-87, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991) ("An agency is not required to establish rules of conduct to last forever, ... but rather must be given ample latitude to adapt its rules and policies to the demands of changing circumstances." (internal quotation marks and brackets omitted)).
 
 
 4
 In granting the applications at issue here, the Secretary found exceptional circumstances in the facts that there was a "need for competitive service ... especially low fare competitive service" in the market for air travel between LaGuardia and the cities in question; that "[a]irlines operating as low-fare carriers provide substantial public benefits by making low fares available to many more travelers and thereby greatly increasing the size of the market"; and "that substantial benefits can be achieved through increasing competition at slot-controlled airports in situations where consumers would be able to obtain significantly lower fares in noncompetitive or underserved markets." Order at 3-4 (footnotes omitted). Although the City asserts that the circumstances at issue here were not exceptional because there are other cities to which only one carrier provides nonstop service from LaGuardia, the Secretary was not required to adopt so narrow a focus. In acting on the respondent airlines' applications, the Secretary considered several factors, including the market for travel between LaGuardia and the cities in question; cross-elasticity of demand and evidence of monopolistic pricing in the fares for travel between LaGuardia and those cities, as compared with the fares for travel between those cities and the two other major New York City-area airports; and the ability of the applicant airlines to provide sustained price competition. In light of the deference to be accorded to such agency determinations, we cannot conclude that the Secretary's decision to grant the exemptions was unreasonable.
 
 
 5
 Finally, although the City's contention that NEPA required the Secretary to issue an environmental impact statement before approving the slots in question was not made in the proceedings before the Secretary, and although it is possible that the City should have been aware, through the absence of the normal precursor proceedings leading to such a statement, that no such statement would be issued, we reach the merits of the City's challenge, and we reject it for the reasons that follow.
 
 
 6
 Federal agencies contemplating "major federal actions significantly affecting the quality of the human environment," 42 U.S.C. § 4332(2)(C), are obligated to include in the recommendation or report on the anticipated action an environmental impact statement ("EIS"), as "evidence that an agency has considered the reasonably foreseeable environmental effects of a proposed major action before making a decision to take the action." Town of Orangetown v. Gorsuch, 718 F.2d 29, 34 (2d Cir.1983), cert. denied, 465 U.S. 1099, 104 S.Ct. 1592, 80 L.Ed.2d 124 (1984). Before deciding to prepare a full-blown EIS, however, an agency may conduct an environmental assessment, see 40 C.F.R. § 1501.4(b) (1997), in order to determine whether an EIS is necessary. Where the action in question is not "significant[ ]," no EIS is required. See 42 U.S.C. § 4332(2)(C); Friends of the Ompompanoosuc v. FERC, 968 F.2d 1549, 1556 (2d Cir.1992); Town of Orangetown v. Gorsuch, 718 F.2d at 34. In such cases, the agency issues a finding of no substantial impact, see 40 C.F.R. § 1501.4(e), documenting the reasons why an EIS is not being prepared. The decision not to prepare an EIS is "left to the informed discretion of the agency proposing the action or project." Town of Orangetown v. Gorsuch, 718 F.2d at 34.
 
 
 7
 Here, the Secretary issued a finding of no substantial impact resulting from granting the applications, supported by, inter alia, a finding that there would be no detrimental effect on air safety, an analysis showing that there would be only marginal increases in the noise level, and the imposition of a condition on the applicant airlines to use their quieter jet models on these new LaGuardia routes. We conclude that the record indicates that the Secretary gave the present applications the "hard look" that NEPA demands, Friends of the Ompompanoosuc v. FERC, 968 F.2d at 1556, and did not act arbitrarily or capriciously in deciding that an EIS was not required.
 
 
 8
 We have considered all of the City's contentions that are properly before us and have found them to be without merit. The petition for review is denied.